EXHIBIT    A

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE OLIVIER FAMILY INTERESTS, LTD &.<br>GBS INTERNATIONAL, L.L.C.<br>　　　　　　　　　Plaintiffs,<br><br>　　　　　vs.<br><br>RUSSELL WRIGHT, INDIVIDUALLY,<br>AS TRUSTEE OF THE KMA TRUST,<br>DOING BUSINESS AS MLO CONSULTING,<br>DOING BUSINESS AS BLUEGRASS<br>HOLDINGS, AND DOING BUSINESS AS<br>PENNY INVESTMENTS; THE KMA TRUST;<br>DORIS WRIGHT, INDIVIDUALLY AND AS<br>TRUSTEE OF THE DORIS E. WRIGHT LIVING<br>TRUST; JOSEPH WRIGHT; DON WOOD;<br>MICHAEL BOGART, INDIVIDUALLY AND AS<br>TRUSTEE OF THE JJA TRUST; THE JJA TRUST<br>ELANA BOGART; JERRY LAHR,<br>INDIVIDUALLY, AS TRUSTEE OF THE<br>KMA TRUST, AND AS TRUSTEE OF PENNY<br>INVESTMENTS; JACQUELINE DEMER;<br>PAT CLAWSON; STOAM HOLDINGS, L.L.C.;<br>STOAM INDUSTRIES, LLC; DEVELOPMENT<br>SYSTEMS, LLC; FINANCIAL FREEDOM<br>ASSOCIATES, LLC; MICHAEL DAVID<br>BEITER; DONNA BEITER; JOEL CEBALLOS;<br>JASON PETERSON; G.D. JALIL; BANK OF<br>AMERICA, N.A.; WILD ROSE ESTATES, LLC;<br>BGI LIMITED COMPANY, LLC; & CERTAIN<br>OTHER UNNAMED DEFENDANTS,<br><br>　　　　　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 08-3075-CV |

## THIRD AMENDED COMPLAINT

The Olivier Family Interests, Ltd. ("OFI") and GBS International, LLC ("GBS"),

pursuant in part to Federal Rule of Civil Procedure 23.1, for their cause of action against

defendants, state as follows:

1

## Jurisdictional Allegations

1.      OFI is a limited partnership organized and existing under the laws of Texas.  OFI and its general partner Olivier Management Company, LLC ("OMC") have their principal office in Montgomery County, Texas.  All partners of OFI and OMC are residents of Texas.

2.      GBS is/was a Wyoming limited liability company, which has its principal office in Springfield, Missouri.  Wyoming Secretary of State records reflect that GBS has been administratively dissolved.

3.      Russell Wright ("Russ") is an individual who resides in Saddlebrooke, Missouri. Russ is/was a trustee of the KMA Trust, and at all times mentioned herein, acted within the course and scope of his agency for said trust.

4.      Doris Wright ("Doris") is the wife of Russ and is an individual who resides in Saddlebrooke, Missouri.  Doris is the trustee of the Doris E. Wright Living Trust.

5.      Joseph Wright ("Joe") is the brother of Russ and is an individual who resides in Edmond, Oklahoma.

6.      Don Wood ("Wood") is an individual who resides in Oklahoma City, Oklahoma.

7.      Jerry Lahr ("Lahr") is an individual who, on information belief, now resides in the United States Bureau of Prisons, believed to be in Texas.  Lahr is/was a trustee of the KMA Trust, and at all times mentioned herein, acted within the course and scope of his agency for said trust.  Lahr has also purported to act as a "trustee" of Penny Investments.

8.      Jacqueline Demer ("Demer") is an individual who, on information and belief, now resides in the United States Bureau of Prisons, believed to be in the Northern District of Georgia.

9.      Michael Bogart ("Michael") is an individual who resides in Hallandale, Florida. Michael is the trustee of the JJA Trust, and at all times mentioned herein, acted within the course

2

and scope of his agency for said trust.  Plaintiffs have been unable to serve Michael since he is concealing his whereabouts.  Plaintiffs' First Amended Complaint filed on or about September 4, 2008 included Michael as a co-defendant.  Plaintiffs have promptly and diligently attempted to effectuate service of process upon Michael by providing service by mail pursuant to FRCP 4(d), by attempting numerous times to personally serve him at two home addresses and one business address, by calling him on his cell phone, and by issuing discovery to other defendants about his whereabouts and requesting assistance from other defendants.  Despite such continuing and diligent attempts to complete service of process, Plaintiffs have been unable to complete service since Michael is concealing himself by temporarily living with other undisclosed persons. Michael is a resident of Florida and operates a business in Florida.  These reasons constitute good cause for the failure to complete service upon Michael.  Pursuant to Florida Statue 48.181, service of process may be made upon the Florida Secretary of State.

10.    Elana Bogart ("Elana") is an individual who resides in Hallandale, Florida. Plaintiffs have been unable to serve Elana since she is concealing his whereabouts.  Plaintiffs' Second Amended Complaint filed on or about November 2, 2008 included Elana as a co-defendant.  Plaintiffs have promptly and diligently attempted to effectuate service of process upon Elana by attempting numerous times to personally serve her at two home addresses and one business address, by calling him on his cell phone, and by requesting assistance from other defendants.  Despite such continuing and diligent attempts to complete service of process, Plaintiffs have been unable to complete service since Elana is concealing herself by temporarily living with other undisclosed persons.  Elana is a resident of Florida and operates as a real estate agent in Florida.  These reasons constitute good cause for the failure to complete service upon Elana.  Pursuant to Florida Statue 48.181, service of process may be made upon the Florida Secretary of State.

SPC-276011-1

11.    Pat Clawson ("Clawson") is an individual who resides in Parkland, Florida.

12.    Stoam Holdings, LLC ("Holdings") is a Delaware limited liability company registered to do business in the State of Missouri. Holdings' last known principal place of business was in Springfield, Missouri.

13.    Stoam Industries, LLC ("Industries") is a Delaware limited liability company registered to do business in the State of Missouri. Industries' last known principal place of business was in Springfield, Missouri.

14.    Development Systems, LLC ("Development Systems") is a Wyoming limited liability company doing business in the State of Missouri.

15.    Financial Freedom Associates, LLC ("Financial Freedom") is a Wyoming limited liability company doing business in the State of Missouri. Russ is the manager and sole member of Financial Freedom.

16.    Michael David Beiter ("Beiter") is an individual who resides in Pompano Beach or Fort Lauderdale, Florida.

17.    Donna Beiter ("Donna") is an individual who resides in Pompano Beach or Fort Lauderdale, Florida.

18.    Joel Ceballos ("Ceballos") is an individual who resides in Margate, Florida.

19.    Jason Peterson ("Peterson") is an individual who resides in Fort Lauderdale, Florida.

20.    G.D. Jalil ("Jalil") in an individual who resides in Cheyenne, Wyoming.

21.    Bank of America Corporation ("BOA") is a national banking corporation that does business in the State of Missouri.

22.    Wild Rose Estates, LLC ("Wild Rose Estates") is a Missouri limited liability company in good standing.

4

23.    BGI Limited Company, LLC ("BGI Limited") is a Missouri limited liability company in good standing.

24.    This Court has jurisdiction over this lawsuit because the suit arises, in part, under the following federal statutes:  (i) the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.*; and (ii) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

25.    Venue is proper before this Court because a substantial part of the acts or omissions committed by each defendant and giving rise to the claims asserted herein occurred in the Southern Division of the United States District Court for the Western District of Missouri.

### Nature of Dispute and General Allegations

26.    OFI and GBS restate the allegations of paragraphs 1-25 as though fully set forth herein.

27.    This case involves the continuation of a "Ponzi" scheme initiated by Russ in 2003 with the assistance of various other defendants, and perpetrated on third-party individuals and entities in Arkansas, Florida, New York, Missouri, and finally OFI.  Russ, with the assistance of the defendants, fraudulently induced OFI to purchase a license Russ did not own for $3,000,000 and to invest $3,500,000 in an entity, GBS, which did not perform the functions it was represented to perform.  Instead of using OFI's funds for the intended investment, OFI's funds were transferred through "shell" entities to pay various defendants' personal expenses, and to pay back previous investors.

28.    In 2006, Lorrie Olivier ("Olivier"), managing member of OMC, was approached and contacted by Russ, Joe, Wood, Michael, and Clawson concerning certain business opportunities.  These discussions occurred in various places, including in Missouri.

29.    Russ, Joe, Wood, and Michael represented that Russ was the owner of certain proprietary knowledge, intellectual property, and other assets (the "Stoam Property") which were

unique in the steel panel wall construction industry, and that a successful enterprise could be developed through a combination of funding from Olivier and Russ and Michael's marketing abilities, management and financial expertise, and foreign contacts.

30.     Russ, Joe, Wood, and Michael proposed to Olivier that Russ, Olivier, and Michael, or entities related to them, form a company to promote the Stoam Property outside the United States.  Russ, Joe, Wood, and Michael also proposed that Olivier, or an entity related to him, acquire a license agreement of the Stoam Property that was owned by Russ and contribute to the entity to be formed.

31.     Olivier agreed that OFI would be a source of limited funding for the company. Olivier did not have expertise in the industry, and it was agreed that OFI would participate only as a passive investor relying upon the skills of Russ, Joe, Wood, and Michael.

32.     Russ, Joe, Wood, and Michael proposed a preliminary agreement that included:

A.     A company would be formed and owned one-third (1/3) by OFI; one-third (1/3) by the KMA Trust (owned and/or controlled by Russ); and one-third by the JJA Trust (owned and/or controlled by Michael);

B.     Russ would license certain patents and copyrights (the "Stoam Technology") that he allegedly owned to OFI (the "License"), which OFI would then contribute to the company;

C.     As consideration for the License, OFI would pay $3,000,000 to Russ and would contribute up to an additional $7,000,000 in the form of loans;

D.     Russ (through the KMA Trust) would contribute his goodwill, industry knowledge, experience, and firm international projects in which it was involved, which Russ represented was valued at $30,000,000; and

6

E.    Michael (through the JJA Trust) would contribute his time developing international projects, which Michael represented was valued at $30,000,000.

33.    During the discussions regarding their proposal and at all times subsequent thereto, Russ, Joe, Wood, and Michael never provided Olivier or OFI with any disclosures, including but not limited to those required by the Securities Act of 1933 or any applicable state laws.  In fact, Russ, Joe, Wood, and Michael hid material facts from Olivier and OFI that, had they been disclosed, would have caused Olivier and OFI to not follow through with the proposal and enter into the agreements set forth below.

34.    Consistent with Russ, Joe, Wood, and Michael's proposal, OFI entered into a "License Agreement" with Russ on March 18, 2006 which purported to grant a perpetual, nonexclusive, limited license to certain "proprietary marks," "proprietary products," "proprietary information," and "proprietary technology" to OFI.   OFI paid Russ $3,000,000 for the license. In turn, $800,000 of OFI's $3,000,000 payment was transferred to Michael, and $200,000 was transferred to Clawson.  Russ did not disclose to OFI that these transfers would be made.  A genuine copy of the License Agreement is attached as Exhibit "A."

35.    Likewise, consistent with Russ, Joe, Wood, and Michael's proposal, OFI, the KMA Trust, and the JJA Trust entered into a "Contribution Agreement" on or about March 18, 2006 setting out the terms of OFI's investment into the company to be formed.  A genuine copy of the Contribution Agreement is attached as Exhibit "B."

36.    Finally, consistent with Russ, Joe, Wood, and Michael's proposal, GBS was formed, and on or about March 18, 2006, OFI, the KMA Trust, and the JJA Trust entered into an "Operating Agreement for Joint Venture" for GBS.  A genuine copy of the Operating Agreement is attached as Exhibit "C."  On March 27, 2006, the Wyoming Secretary of State accepted and filed the Articles of Incorporation for GBS.

7

37.     Under the GBS Operating Agreement, Russ was named as CEO of GBS, and was given full, complete, and exclusive power and authority to manage and control the business, property, and affairs of GBS.

38.     Russ, Joe, Wood, and Michael drafted the License Agreement, the Contribution Agreement, and the Operating Agreement.

39.     Upon taking control of GBS, Russ empowered Joe and Robert Feeney with managerial, operating, and financial duties, including but not limited to authorizing and effecting cash transfers and other expenditures.

40.     Unknown to OFI, prior to and contemporaneously with the formation of GBS and execution of the Transaction Documents, Russ, Joe, Wood, and Michael, with the assistance of Beiter, Donna, Ceballos, Peterson, Lahr, Demer, and Jalil, began forming and setting up a number of "shell" entities to siphon off OFI funds for their own personal use and to avoid paying state and federal income taxes.   These shell companies include, but are not limited to, Development Systems and Financial Freedom.

41.     For their participation, Beiter and Donna were paid over $35,000 out of Stoam Holdings which were recorded as estate and asset planning expenses.   Donna, Peterson, Lahr, Jalil, and Demer worked with or for Beiter, and all acted on behalf of the shell companies in various capacities.   Neither Beiter, Donna, Peterson, Lahr, Jalil nor Demer is a licensed attorney in any jurisdiction in the United States.

42.     Once the formation documents of the shell companies were drafted and filed with the Wyoming Secretary of State, Russ, Joe, Wood, Michael, Lahr, Demer, Beiter, Donna, and Peterson, or some combination thereof, would meet with Ceballos to open bank accounts with BOA for the shell companies.

8

43.     Ceballos was a bank officer with BOA in Fort Lauderdale, Florida and at all relevant times acted in the course and scope of his employment with BOA.

44.     Ceballos and BOA were necessary parts of the scheme to defraud OFI in that the shell companies were useless without bank accounts to facilitate the transfer of funds out of GBS and into accounts maintained by Russ, Joe, Wood, and Michael.

45.     In opening accounts for the shell companies, Ceballos and BOA (i) participated in the scheme to defraud OFI; and (ii) violated federal banking laws and internal bank policies by failing to obtain the necessary information to verify the owners of the shell companies.  For its part, BOA received approximately $6,500,000 which was deposited into non-interest bearing accounts.

46.     The formation of the shell companies and opening of bank accounts with BOA allowed the disbursement of funds from GBS and Stoam Holdings to what appeared to be third party vendors, but in fact the disbursements facilitated the "Ponzi" scheme and illegal payments to various parties described herein.

47.     Acting in good faith, OFI contributed a total of $6,455,000 pursuant to the Transaction Documents beginning in April 2006.

48.     In October 2006, OFI traveled to Springfield, Missouri and met with Russ, Joe, Wood, Michael, and others.  During the visit, Russ, Joe, Wood, Michael, and others led OFI to believe that a manufacturing facility they toured was the GBS manufacturing plant when, in fact, it was the manufacturing plant of Stoam Holdings.  OFI continued with its contributions based on this representation.

49.     Commencing in April 2007 and continuing to present, OFI has made numerous requests for copies of GBS's tax returns, accounting materials, and financial statements.  None of these materials have been provided.  It is believed that GBS has never prepared or filed state or

9

federal tax returns. The failure to provide the requested materials and to file tax returns violates Russ's duties under the Operating Agreement.

50. Eventually, upon discovering certain irregularities, OFI began an investigation which revealed that (i) Russ did not own the propriety marks, products, information, and technology that he licensed to OFI under the License Agreement; (ii) Russ (through the KMA Trust) could not contribute his goodwill, industry knowledge, experience, and firm international projects in which he was allegedly involved to GBS; and (iii) Michael (through the JJA Trust) could not contribute his time developing international projects or buyers for such projects to GBS.

51. Further, in October 2007, OFI discovered that nearly $3,500,000 of its funds had been transferred to the shell companies, to Russ, Doris, Joe, Wood, and Michael or their related entities for work they never performed, to Clawson for work he never performed, to various entities for the sole benefit of Stoam Holdings and for work it never performed, or for various personal expenses of Russ, Doris, Joe, Wood, and Michael.

52. On information and belief, OFI's funds were used for, among many other things, to purchase a large residence and neighboring real estate for Russ and Doris in Saddlebrooke, Missouri (the "Saddlebrooke House" and the "Saddlebrooke Real Estate"), to purchase an interest for Michael and Elana in a certain Cessna 414A airplane, tail number N97JK (the "Airplane"), to purchase a large residence for Joe in Oklahoma, and to provide some $61,928.23 in cash to Clawson.

53. On or about December 31, 2008, Russ, doing business as MLO Consulting and in coordination with Doris, caused the Saddlebrooke House to be conveyed to Wild Rose Estates via warranty deed. Russ and Doris made this conveyance with the actual intent to hinder, delay, and defraud their creditors, without receiving reasonably equivalent value, and at a time they

10

believed they would incur debts beyond their ability to pay.  A legal description for the Saddlebrooke House is attached as Exhibit "D."

54.    On or about March 20, 2009, Wild Rose Estates conveyed the Saddlebrooke House to BGI Limited via warranty deed.  No consideration supported this transfer, and it was made in furtherance of Russ and Doris's scheme to hide their assets.

55.    On or about December 31, 2008, Russ, doing business as Bluegrass Holdings and in coordination with Doris, caused the Saddlebrooke Real Estate to be conveyed to Wild Rose Estates via warranty deed.  Russ and Doris made this conveyance with the actual intent to hinder, delay, and defraud their creditors, without receiving reasonably equivalent value, and at a time they believed they would incur debts beyond their ability to pay.  A legal description for the Saddlebrooke Real Estate is attached as Exhibit "E."

56.    On or about March 20, 2009, Wild Rose Estates conveyed the Saddlebrooke House to BGI Limited via warranty deed.  No consideration supported this transfer, and it was made in furtherance of Russ and Doris's scheme to hide his assets.

57.    On or about December 31, Russ, doing business as Penny Investments and in coordination with Doris, caused certain property in which they had an interest in Stone County, Missouri (the "Stone County Property") to be conveyed to Wild Rose Estates via warranty deed. Russ and Doris made this conveyance with the actual intent to hinder, delay, and defraud their creditors, without receiving reasonably equivalent value, and at a time they believed they would incur debts beyond their ability to pay.  A legal description for the Stone County Property is attached as Exhibit "F."

58.    On or about February 27, 2009, Wild Rose Estates conveyed the Stone County Property to BGI Limited via warranty deed.  No consideration supported this transfer, and it was made in furtherance of Russ and Doris's scheme to hide his assets.

11

59.     Despite the above described transfers, Russ and Doris continue to use and possess the Saddlebrooke House, the Saddlebrooke Real Estate, and the Stone County Property.

60.     In addition, on information and belief, Russ and Doris have engaged in a series of transactions in which they, or entities under their control, have disbursed funds to their minor children, trusts set up for their minor children, and/or other family members or third parties. These conveyances were made with the actual intent to hinder, delay, and defraud their creditors, without receiving reasonably equivalent value, and at a time they believed they would incur debts beyond their ability to pay.

61.     Since discovering the fraud and misapplication of GBS funds, OFI has made several demands for a members' meeting to remove Russ and elect a new CEO.  In spite of these demands, and in breach of the Operating Agreement and Wyoming law, Russ has conspired with Michael and others to prevent convening a members' meeting so to conceal their fraudulent activities.  These activities continue to this day.

### Count I – Breach of Fiduciary Duty

For Count I of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust, OFI and GBS state:

62.     OFI and GBS restate the allegations of paragraphs 1-61 as though fully set forth herein.

63.     As officers, managers, employees, trustees or members of GBS, Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust owed certain fiduciary duties to OFI.

64.     Russ, Joe, Wood, Michael, and Lahr, individually and/or acting on behalf of the KMA and JJA Trusts, breached these fiduciary duties to OFI as described above.

65.     As a result, OFI has been damaged.

12

66.     Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust's actions were intentional, malicious, willful, and without excuse, entitling OFI to recover punitive damages.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

### Count II – Fraudulent Misrepresentation

For Count II of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, OFI and GBS state:

67.     OFI and GBS restate the allegations of paragraphs 1-66 as though fully set forth herein.

68.     Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust made false statements and/or failed to disclose material factual information to OFI and Olivier, including, but not limited to:

      A.     That GBS would be formed to market international licenses and to sell steel wall panel products in foreign markets;

      B.     That GBS would participate in the formation of manufacturing facilities outside the United States, hire and train foreign employees, acquire inventory, manufacture steel wall panel products, and solicit buyers of its products in the territories set forth in the License Agreement;

      C.     That GBS employees would acquire the training and expertise necessary to establish operations in the territories set forth in the License Agreement;

      D.     That GBS would have its own tangible operations which prospective customers and/or acquirers of GBS could inspect;

13

E.    That the funds contributed by OFI to GBS would be used solely for the purposes set forth in subparts A-D above;

F.    That certain facilities, employees, equipment, inventory, completed products, customers and/or orders belonged to GBS when in fact they belonged to defendants or third parties;

G.    That the funds contributed by OFI to GBS would be used to carry out the legitimate business of GBS when in fact they were used almost entirely for other, improper purposes; and

H.  That Russ and Michael (through the KMA and JJA Trusts, respectively) could contribute to GBS as they had agreed.

69.    Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust knew when they made these representations to OFI that they were false or alternatively they made these representations recklessly and without regard to the truth or falsity thereof.

70.    Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust intended that OFI rely on these representations and, in fact, OFI did rely on these representations to its detriment.

71.    As a result of these false and materials representations and/or nondisclosure of material facts, OFI has been damaged.

72.    Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust's actions were intentional, malicious, willful, and without excuse, entitling OFI to recover punitive damages.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, jointly and severally, in an amount

14

which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

### Count III – Negligent Misrepresentation

For Count III of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, OFI and GBS state:

73.     OFI and GBS restate the allegations of paragraphs 1-72 as though fully set forth herein.

74.     Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust failed to exercise reasonable care in making the false representations to OFI and failing to disclose material facts as detailed above.

75.     OFI relied on these representations to its detriment.

76.     As a result of these false and materials representations and/or nondisclosure of material facts, OFI has been damaged.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action, and for such other and further relief as the court deems just.

### Count IV – Breach of Contract (Operating Agreement)

For Count IV of their Third Amended Complaint against Russ, Michael, KMA Trust, and JJA Trust, OFI and GBS state:

77.     OFI and GBS restate the allegations of paragraphs 1-76 as though fully set forth herein.

78.     OFI has faithfully performed all its duties, obligations, and conditions under the Operating Agreement.

15

79.    Russ and Michael, as trustees of the KMA Trust and the JJA Trust, have failed and refused and continue to fail and refuse to perform their duties and obligations under the Operating Agreement by failing and refusing to perform according to its terms to act in the best interests of GBS as set forth herein.

80.    Further, Russ and Michael, as trustees of the KMA Trust and JJA Trust, have been grossly negligent, fraudulent, deceitful, and/or reckless, breaching their duties to act under the Operating Agreement in good faith.

81.    As a result of Russ and Michael's actions set forth herein, OFI has been damaged.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Michael, KMA Trust, and JJA Trust, jointly and severally, in the amount of at least $3,455,000; for reasonable attorney fees; for costs of this action, and for such other and further relief as the court deems just.

### Count V - Breach of Contract (License Agreement)

For Count V of their Third Amended Complaint against Russ, OFI and GBS state:

82.    OFI and GBS restate the allegations of paragraphs 1-81 as though fully set forth herein.

83.    OFI has faithfully performed all its duties, obligations, and conditions under the License Agreement, including the payment of $3,000,000 to Russ.

84.    Russ has failed and refused and continues to fail and refuse to perform his duties and obligations under the License Agreement in that he never owned and therefore could not and never did license the propriety marks, products, information, and technology to OFI.

85.    By acting in this manner, Russ has been grossly negligent, fraudulent, deceitful, and/or reckless, breaching his duties to act under the License Agreement in good faith.

86.    As a result of Russ's actions set forth herein, OFI has been damaged.

16

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ in the amount of at least $3,000,000; for reasonable attorney fees; for costs of this action, and for such other and further relief as the court deems just.

### Count VI – Conspiracy (Missouri Law)

For Count VI of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA, OFI and GBS state:

87.    OFI and GBS restate the allegations of paragraphs 1-86 as though fully set forth herein.

88.    Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA had an agreement and a meeting of the minds to fraudulently divert OFI's funds.

89.    In furtherance of this agreement and meeting of the minds, Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA acted in concert to establish "shell entities," set up bank accounts for the "shell entities," and transfer OFI's funds through those accounts to pay various defendants' personal expenses and to pay back previous investors, all the while avoiding the payment of state and federal income taxes. Ceballos and BOA actively participated in the scheme to defraud OFI and violated federal banking laws and internal bank policies by failing to obtain the necessary information to verify the owners of the shell entities. In return, BOA received approximately $6,500,000 which was deposited into non-interest bearing checking and savings accounts. The opening of the bank accounts allowed the disbursement of funds from GBS and Stoam Holdings to what appeared to be third party vendors, but in fact the

17

disbursements facilitated the "Ponzi" scheme and illegal payments to various parties described herein.

90.     The concerted actions taken by Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA were unlawful.

91.     As result of Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA's actions set forth herein, OFI has been damaged.

92.     Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA's actions were intentional, malicious, willful, and without excuse, entitling OFI to recover punitive damages.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

### Count VII – Conspiracy (Florida Law)

For Count VII of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA, OFI and GBS state:

93.     OFI and GBS restate the allegations of paragraphs 1-92 as though fully set forth herein.

18

94.    Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA had an agreement and a meeting of the minds to fraudulently divert OFI's funds.

95.    In furtherance of this agreement and meeting of the minds, Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA acted in concert to establish "shell entities," set up bank accounts for the "shell entities," and transfer OFI's funds through those accounts to pay various defendants' personal expenses and to pay back previous investors, all the while avoiding the payment of state and federal income taxes. Ceballos and BOA actively participated in the scheme to defraud OFI and violated federal banking laws and internal bank policies by failing to obtain the necessary information to verify the owners of the shell entities. In return, BOA received approximately $6,500,000 which was deposited into non-interest bearing checking and savings accounts. The opening of the bank accounts allowed the disbursement of funds from GBS and Stoam Holdings to what appeared to be third party vendors, but in fact the disbursements facilitated the "Ponzi" scheme and illegal payments to various parties described herein.

96.    As result of Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA's actions set forth herein, OFI has been damaged.

97.    Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer, Beiter, Donna, Peterson, Jalil, Ceballos, and BOA's actions were intentional, malicious, willful, and without excuse, entitling OFI to recover punitive damages.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Development Systems, Financial Freedom, Demer,

19

Beiter, Donna, Peterson, Jalil, Ceballos, and BOA, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

### Count VIII – Force of Numbers Conspiracy (Florida Law)

For Count VIII of their Third Amended Complaint against Ceballos and BOA, OFI and GBS state:

98.    OFI and GBS restate the allegations of paragraphs 1-97 as though fully set forth herein.

99.    Without the active cooperation and participation of Ceballos and BOA, Russ, Joe, Wood, Michael, Lahr, Clawson, Doris, Demer, Beiter, Donna, Peterson, and Jalil would not have been able to accomplish the object of their conspiracy in that the shell companies were useless without bank accounts to facilitate the fraudulent diversion of OFI funds.

100.    As a result of Ceballos and BOA's actions, OFI has been damaged in an amount far greater that it would have been damaged absent Ceballos and BOA's cooperation and participation.

101.    Ceballos and BOA's actions were intentional, malicious, willful, and without excuse, entitling OFI to recover punitive damages.

WHEREFORE, OFI prays the court enter judgment in its favor and against Ceballos and BOA, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

### Count IX – Violation of Federal and State Securities Laws

For Count IX of their Third Amended Complaint against Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust, OFI and GBS state:

20

102.   OFI and GBS restate the allegations of paragraphs 1-101 as though fully set forth herein.

103.   Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust acted as underwriters in offering an interest in GBS to OFI as a profit-making scheme in which OFI was to invest its money in GBS as a common enterprise to make a profit.  Negotiations involving this offer for a membership interest in GBS occurred in Florida, Missouri, Georgia, and Texas.

104.   OFI invested its money in GBS and expected to make a profit solely from the efforts of Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, and third parties under their control.

105.   Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust never provided Olivier or OFI with any investment information relating to GBS, including but not limited to GBS's balance sheet, profit and loss statements, facts regarding the issuer's status, facts regarding legal proceedings involving GBS's proposed directors and officers, GBS's financial projections, and/or any other disclosures, required by the Securities Act of 1933 or any applicable state laws.

106.   Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust never registered GBS with the appropriate federal and state security agencies.

107.   Had Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust disclosed the required investment information and/or registered GBS with the appropriate federal and state security agencies, OFI would not have purchased an interest in GBS or entered into the License Agreements.  Thus, as a result of Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust's actions, OFI has been damaged.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, KMA Trust, and JJA Trust, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

21

**Count X – Derivative Action by OFI on Behalf of GBS**

For Count X of their Third Amended Complaint against Russ, Doris, Joe, Wood, Michael, Development Systems, Financial Freedom, Lahr, KMA Trust, and JJA Trust, OFI and GBS state:

108.    OFI and GBS restate the allegations of paragraphs 1-107 as though fully set forth herein.

109.    OFI is a member of GBS. OFI fairly and adequately represents the interests of all other members of GBS.

110.    As set forth herein, Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust have failed to act in the best interests of GBS in that they have misapplied GBS funds for the person gain of themselves and their associates.

111.    OFI has made attempts to have GBS take action against Russ, Joe, Wood, Michael, Lahr, KMA Trust, and JJA Trust, but those efforts have been met with silence or non-action.

112.    OFI has expended substantial sums for litigation expenses and expects to continue incurring such expenses, for which it should be reimbursed by GBS.

113.    Intervention by OFI is necessary to prevent the continuing waste of GBS assets and the continuing loss of opportunities, as well as to recover those claims against Russ, Doris, Joe, Wood, Michael, Development Systems, Financial Freedom, Lahr, KMA Trust, and JJA Trust.

WHEREFORE, OFI requests that it be given the right to bring the necessary lawsuits and to institute the necessary accounting and investigations to support such lawsuits so that the assets of GBS may be preserved and the entity returned to profitability; and for such other and further relief as the Court deems just.

22

### Count XI – Conversion on Behalf of GBS

For Count XI of their Third Amended Complaint against Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, and Doris, OFI and GBS state:

114.    OFI and GBS restate the allegations of paragraphs 1-113 as though fully set forth herein.

115.    GBS owned, possessed, and/or had a right to possession of the monies in its bank accounts and assets it had purchased.  Those monies and assets were to be used for the purpose of marketing and manufacturing certain products outside of the Unite States.

116.    Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, and Doris converted GBS's monies and assets to pay for their personal expenses, and to pay back previous investors.

117.    Through their actions, Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, and Doris exercised wrongful dominion and control over GBS's monies and assets.

118.    As a result of these actions, GBS has been damaged.

119.    Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, and Doris's actions were intentional, malicious, willful, and without excuse, entitling GBS to recover punitive damages.

WHEREFORE, GBS prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, KMA Trust, JJA Trust, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, and Doris, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for costs of this action; for punitive damages; and for such other and further relief as the court deems just

SPC-276011-1

## Count XII – Constructive Trust

For Count XII of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, Holdings, Industries, Development Systems, Financial Freedom, Doris, Wild Rose Estates, and BGI Limited, OFI and GBS state:

120.    OFI and GBS restate the allegations of paragraphs 1-119 as though fully set forth herein.

121.    Russ, Joe, Wood, Michael, Elana, Lahr, Clawson, and Doris unlawfully transferred and/or caused to be transferred OFI's funds to themselves and/or entities they control.

122.    A constructive trust or equitable lien should be placed upon any asset which can be traced, in whole or in part, to these unlawful transfers, including but not limited to:

> A.    The Saddlebrooke House;
>
> B.    The Saddlebrooke Real Estate;
>
> C.    The Airplane;
>
> D.    Joe's Oklahoma Residence;
>
> E.    The $61,928.23 in cash provided to Clawson;
>
> F.    Any asset of Development Systems, Financial Freedom, Holdings, or Industries purchased with OFI funds; and
>
> G.    Any bank account in which OFI funds were deposited for Russ, Joe, Wood, Michael, Elana, Lahr, Clawson, and Doris Development Systems, Financial Freedom, Holdings, Industries, or any other entity which Russ, Joe, Wood, Michael, Elana, Lahr, Clawson, and/or Doris own or control.

WHEREFORE, OFI requests that be granted a constructive trust or equitable lien over any asset which can be traced, in whole or in part, to its funds; that its constructive trust or

24

equitable lien take priority over any other interest in said assets; and for such other and further relief as the Court deems just.

### Count XIII – Racketeer Influenced and Corrupt Organizations Act

For Count XIII of their Third Amended Complaint against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, OFI and GBS state:

123.    OFI and GBS restate the allegations of paragraphs 1-122 as though fully set forth herein.

124.    Beginning in early 2003 and continuing to present, Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust acted as a group of individuals associated in fact, sharing the common purpose and objective of defrauding investors. Russ, Joe, Wood, Michael, Lahr, and Clawson each acted in furtherance of this enterprise.

125.    Beginning in late 2005, Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust engaged in a pattern of racketeering activity in various states, including, but not limited to Oklahoma, Florida, Georgia, Texas, Wyoming, and Missouri. In furtherance of their enterprise, Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust sought to defraud OFI of millions of dollars, and used, among other means, the mail and telephones, in furtherance of their scheme. Their actions are indictable under 18 U.S.C. § 1341, *et seq*. and 18 U.S.C. § 1343, *et seq.*

126.    As a result of Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust's actions, OFI has been damaged.

WHEREFORE, OFI prays the court enter judgment in its favor and against Russ, Joe, Wood, Michael, Lahr, Clawson, KMA Trust, and JJA Trust, jointly and severally, in an amount which is fair and reasonable under the circumstances; for reasonable attorney fees; for treble

damages; for costs of this action; for punitive damages; and for such other and further relief as the court deems just.

## Count XIV – Fraudulent Conveyance

For Count XIV of their Third Amended Complaint against Russ, Doris, Wild Rose Estates, and BGI Limited, OFI and GBS state:

127.    OFI and GBS restate the allegations of paragraphs 1-126 as though fully set forth herein.

128.    Russ and Doris's conveyances of the Saddlebrooke House, the Saddlebrooke Real Estate, and the Stone County Property to Wild Rose Estates, and Wild Rose Estates' subsequent conveyances to BGI Limited, were all made with the actual intent to hinder, delay, and defraud Russ and Doris's creditors, without receiving reasonably equivalent value, and at a time Russ and Doris were insolvent and/or believed they would incur debts beyond their ability to pay.

129.    In addition, all disbursements of funds by Russ and Doris or entities under their control to their minor children, trusts set up for their minor children, and/or other family members or third parties have likewise been made with the actual intent to hinder, delay, and defraud their creditors, without receiving reasonably equivalent value, and at a time they believed they would incur debts beyond their ability to pay.

130.    As a result of Russ, Doris, Wild Rose Estates, and BGI Limited's actions, OFI and GBS have been damaged, and OFI and GBS request the following relief:

A.      A declaration that the above described transfers are void;

B.      Attachment of the transferred property;

C.      An injunction against further disposition of assets by Russ or Doris or entities they own or control; and

26

      D.    The appointment of a receiver to take charge of any assets of Russ or Doris or entities they own or control.

    WHEREFORE, OFI and GBS pray that Court enter judgment in accordance with the relief requested above; for a declaration that their claims take priority over any other interest in said assets; and for such other and further relief as the Court deems just.

### Demand for Jury Trial

    OFI and GBS hereby demand trial by jury in this case.

                  HUSCH BLACKWELL SANDERS LLP

                  By:   /s/Jason Smith
                      Charles B. Cowherd, #27087
                      Jason Smith, #57657
                      1949 E. Sunshine, Suite 2-300
                      Springfield, MO  65802-3799
                      Office: (417) 862-6726
                      Fax No: (417) 862-6948

                      A. James Lynn
                      Texas SBN 24011429
                      6820 Walling Lane
                      Dallas, Texas  75202-3796
                      (214) 341-0000
                      (214) 341-4907 (FAX)

                      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and mailed the foregoing by regular U. S. Mail to:

Russell and Doris Wright    Pat Clawson
P.O. Box 399        2731 Executive Park Drive, Suite 7
Spokane, MO 65754     Weston, FL 33311


          /s/Jason Smith
          Jason Smith

SPC-276011-1