## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE:

MICHAEL JOSEPH BOGART

     Debtor

_____/

OLIVIER FAMILY INTERESTS, LTD.

     Plaintiff

v.

MICHAEL JOSEPH BOGART

     Defendant

_____/

CASE NO.: 14-34665-RBR

Chapter 7  Proceeding

Adv. Proc. No. 15-01099-RBR

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Olivier Family Interests, Ltd. ("Plaintiff"), by and through its undersigned counsel and pursuant to Rule 56 of the *Federal Rules of Civil Procedure* ("FRCP"), made applicable to this proceeding by virtue of Rule 7056 of the *Federal Rules of Bankruptcy Procedure* ("FRBP"), hereby files this *Motion for Summary Judgment* ("Motion") as to the *Complaint to Determine Non-Dischargeability of Judgment Debt* (CP #1) ("Complaint").    In support of the Motion, Plaintiff states as follows:

### PRELIMINARY STATEMENT

**There is no material issue of fact, and Plaintiff is entitled to a judgment as a matter of law.  Collateral estoppel applies here to bar the Debtor from re-litigating a prior Federal Court's Jury Verdict and Court Judgment that found the Debtor guilty of committing wire fraud as a predicate act for a RICO violation, and assessing damages against the Debtor for such acts in the amount of $12,900,000.00.  As a result, this Judgment Debt is non-dischargeable in this Debtor's bankruptcy case pursuant to Bankruptcy Code §523(a)(2)(A) and (6).**

-2-

## I.    INTRODUCTION

1.    On February 10, 2015, Plaintiff filed the Complaint, seeking a determination that a certain judgment debt owed by the Defendant Michael Joseph Bogart (referred to as "Bogart" or the "Debtor"), is a non-dischargeable debt pursuant to Bankruptcy Code §§523(a)(2)(A) and (a)(6).  On April 27, 2015, Bogart filed his *Answer to Complaint to Determine Non-Dischargeability of Judgment Debt* (CP #16) ("Answer").

2.    Bogart is the Debtor in the above-styled individual Chapter 7 bankruptcy case.

3.    Based on Bogart's amended bankruptcy schedules (CP #20 in the main bankruptcy case), the Plaintiff holds the largest unsecured claim in this case, representing over 99% of the general unsecured creditor body.  The Debtor's Answer admits that Plaintiff is the largest creditor of this case.  See, Complaint, paragraph 2; Answer, paragraph 2.

## II.    UNDISPUTED FACTS

4.    Prior to the commencement of this bankruptcy case, on February 29, 2008, Plaintiff had commenced an action against the Debtor and others in the United States District Court for the Western District of Missouri in a case captioned Olivier Family Interests, Ltd., et al. v. Russell Wright, et al., Case No. 08-3075-CV-S-DW ("RICO Action").

5.    In the *Third Amended Complaint* ("RICO Complaint"), filed in the RICO Action by the Plaintiff, Plaintiff alleged liability against the Debtor for damages caused to the Plaintiff as a result of the Debtor's actions as a member of an enterprise constituting a group of individuals sharing a common purpose and objective of defrauding investors, such as the Plaintiff.  The RICO Complaint alleged that the Debtor violated the Federal Racketeer Influenced and Corruption Organizations Act ("RICO") by the Debtor being engaged in a pattern of racketeering activity, and the Debtor committing predicate acts of mail fraud and/or wire fraud.    A true copy of the RICO Complaint was filed as Exhibit "A" to the Complaint, and is incorporated here as more fully set forth herein.

6.    The Plaintiff, in the RICO Complaint, alleged in the RICO Action as follows:

The Debtor was part of the RICO Defendants, as that term is defined in the *Third Amended Complaint,* who participated in a scheme to defraud the Plaintiff and others by the continuation of a Ponzi scheme.  The Complaint alleges that one of the named Defendants in the RICO Action was claimed by the RICO Defendants to be  the owner of certain proprietary knowledge, intellectual property, and other assets which were unique in the steel panel wall construction industry, and that a successful enterprise could be developed through the combination of funding from Plaintiff, coupled with the Debtor's marketing abilities, management and financial expertise,

-3-

and foreign contacts.

The Plaintiff was caused to advance financing for the business affairs. Unbeknownst to the Plaintiffs, the Debtor and others began forming and setting up a number of "shell" entities to syphon off the funds provided by the Plaintiff, and to use those funds for their personal use.

As a result of the fraudulent scheme and conspiracy carried out, managed, participated in, or directed by the Debtor and the other Defendants, Plaintiff subsequently learned that the proprietary marks, products, information, and technology that were part of this business arrangement, were not in fact owned by one of the Defendants, and that these Defendants including the Debtor could not contribute their time in developing international projects or buyers for such projects.

Acting in good faith, the Plaintiff contributed at least $6,455,000.00 commencing in April 2006, in reliance on the misrepresentations of the Debtor and others.

7.      The Debtor denied that he knew of or participated in any scheme to defraud Plaintiff as alleged in the RICO Action.

8.      The RICO Action was tried before a jury on May 14, 2012 through May 23, 2012.

9.      At the trial, the District Court in the RICO Action provided the jury with detailed jury instructions setting forth the legal elements of each cause of action (the "Jury Instructions"). The Jury Instructions contained many instructions that related to the claim of a RICO violation by the Debtor. Specifically, Instructions numbered "22" through "33" of the Jury Instructions set forth and instructed the jury in detail on all the elements needed to establish a RICO violation, as well as how to assess damages if such a violation is found. The Jury Instructions provided detail on the elements of the acts of wire fraud, that the Debtor was accused by Plaintiff of committing to the detriment of the Plaintiff. See, for example Instructions numbered "28" and "29" of the Jury Instructions. A true copy of the Jury Instructions was attached as Exhibit "B" to the Complaint, and are incorporated here as more fully set forth herein.

10.      On May 23, 2012, the jury returned a *Verdict* ("Verdict"), in favor of Plaintiff and against the Debtor as to the claim for RICO violations. The jury assessed damages in favor of the Plaintiff caused by the violation of RICO by Bogart, to be in the amount of $4.3 million. See, Verdict Form J.      A true copy of the Verdict was attached as Exhibit "C" to the Complaint, and is incorporated here as more fully set forth herein.

11.      On May 31, 2012, the District Court entered a *Judgment* ("Judgment"),  against the

-4-

Debtor and others.  A true copy of the Judgment was attached as Exhibit "D" to the Complaint, and is incorporated here as more fully set forth herein.

12.     On June 29, 2012, the Debtor filed his Notice of Appeal to the Eighth Circuit Court of Appeals of the Judgment entered against him.  A true copy of the Notice of Appeal was attached as Exhibit "E" to the Complaint, and is incorporated here as more fully set forth herein.

13.     On August 27, 2013, the Eighth Circuit Court of Appeals entered its *Judgment*, affirming the Judgment entered against the Debtor in the U.S. District Court.   A true copy of this Judgment was attached as Exhibit "F" to the Complaint, and is incorporated here as more fully set forth herein.

14.     On December 31, 2013, the Debtor filed a Writ of Certiorari to the United States Supreme Court.  The Writ of Certiorari was denied by the Supreme Court on March 31, 2014.  See, Complaint, paragraph18; Answer, paragraph 18.

15.     There was never a stay granted to execution on the Judgement, pending appeal of the Judgment.

16.     As set forth in the Judgment, the District Court awarded Plaintiff compensatory damages against the Debtor, in the amount of $4.3 million, and trebled those damages for a total judgment amount in favor of Plaintiff and against the Debtor, in the amount of $12,900,000.00.

17.     Count XIII in the RICO Complaint sought recovery against Bogart for violation of RICO.  With respect to the civil RICO count, the Jury Instructions provide that to succeed on such a claim, the Plaintiff must prove by a preponderance of the evidence every element of a RICO claim. The jury was instructed that they should enter a verdict in favor of the Plaintiff if the jury believes:

> *First*, that an enterprise existed; and
> *Second*, that the enterprise effected interstate or foreign commerce; and
> *Third* . . . [Bogart] was associated with or employed by the enterprise; and
> *Fourth*, . . . [Bogart] knowingly engaged in a pattern of racketeering activity; and
> *Fifth*, . . . [Bogart] conducted or participated in the conduct of the enterprise through that pattern of racketeering activity; and
> *Sixth*, that [Plaintiff] reasonably relied to its detriment on the predicate acts of . . . [Bogart] which constituted the racketeering activity; and
> *Seventh*, that [Plaintiff] was injured in its business or property by reason of the racketeering activity.

> See, Jury Instruction No. 23.

18.     The jury was instructed as to the fourth element of the RICO count, that Plaintiff must

-5-

prove that Bogart engaged in a pattern of racketeering activity.  The jury was instructed that the Plaintiff had alleged that Bogart committed or participated in the commission of the following racketeering acts, also referred to as "predicate acts":

> Engaging in a scheme to defraud that resulted in the use of so-called interstate "wires" - primarily the telephone, facsimile transmissions, and e-mail - in violation of 18 U.S.C. §1343.
>
> See, Jury Instruction No. 27.

19.     The jury was further instructed that the wire fraud statute has four essential elements:

> *First*, . . .[Bogart] voluntarily and intentionally participated in a scheme to obtain money or property by means of material, false, or fraudulent representation; and
> *Second*, . . . [Bogart] did so with the intent to defraud; and
> *Third*, . . . [Bogart] used or caused to be used, interstate wire facilities, in furtherance of, or in an attempt to carry out, some essential step in the scheme; and
> *Fourth*, [Plaintiff] suffered a direct injury resulting from the scheme.
>
> See, Jury Instruction No.  28.

20.     The jury was further instructed that in determining whether the Plaintiff had shown by the preponderance of the evidence that Bogart had engaged in wire fraud, that the jury must keep in mind the following:

> The phrase "scheme to defraud" includes any plan or course of action intended to deceive or cheat another out of money or property by employing falsehoods, concealing material facts, or omitting material facts.  It also means the obtaining of money or property by means of material false representations or promises.
>
> A statement or representation is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person in deciding whether to engage or not to engage in a particular transaction.
>
> To act with "intent to defraud" means to act knowingly and with the intent to deceive someone with the purpose of causing some loss or property or bringing about some financial gain to oneself or another to the detriment of a third party.
>
> The statement or representation is "false" when it is untrue when made or when it effectively conceals all myths and material facts.
>
> See, Jury Instruction No. 29.

21.     The jury was then instructed to consider the issue of damages for a RICO claim

-6-

violation only after the jury determines that Plaintiff has proven by the preponderance of the evidence all the elements of the RICO claim.  In determining damages, the jury was instructed to award damages to the Plaintiff for the amount of money it lost caused by the actions of Bogart.  See, Jury Instruction No. 33.

22.    On May 23, 2012, based on the foregoing Jury Instructions, the jury returned the Verdict in favor of Plaintiff and against Bogart as to the RICO count.

23.    By rendering the jury Verdict against Bogart for RICO, the jury necessarily found that Bogart knowingly and directly conducted the racketeering activities through the enterprise by directly sending, or proving the sending of, fraudulent representations through the wire to Plaintiff.

24.    On May 30, 2012, the District Court entered the Judgment against Bogart.  The Judgment awarded to the Plaintiff damages against Bogart for the RICO violation, in the amount of $12,900,000.00.

25.    All appellate efforts by Bogart with respect to the Judgment have been exhausted.

26.    At no time was there the entry of a stay of enforcement of the Judgment pending appeal.

## III.    LEGAL ARGUMENT

### A.    Summary Judgment Standard

27.    In order to prevail on a Motion for Summary Judgment, the Movant must meet the statutory criteria set forth in FRCP 56, made applicable to adversary proceedings by FRBP 7056. FRCP 56© reads in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

28.    This Court aptly summarized the summary judgment standard in In Re: Main Line Corp., 19 Fla. L. Weekly Fed. B 130, at *2 - 3 (Bankr. S.D. Fla. 2006):

> In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (citing Anderson, 477 U.S. at 248).  Summary Judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in

-7-

favor of the non-moving party.  Anderson, 477 U.S. at 248-49.

In a motion for summary judgment, the moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact.  See, Celotex, 477 U.S. at 322 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970)).  When a motion for summary judgment is made and supported by the movant, Federal Rule of Civil Procedure 56(e) requires the non-moving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial.  See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts," mere conclusions are not enough to create an issue of material fact.  *Id.* at 586.

29.     In light of the standard for summary judgment, and for the reasons discussed below, summary judgment in favor of Plaintiffs is appropriate as to its respective claims for non-dischargeability of debt under §§523(a)(2)(A) and (a)(6).

### B.    The Doctrine of Collateral Estoppel

30.     The doctrine of collateral estoppel may apply in a non-dischargeability action to prevent the re-litigation of issues already litigated and determined by a valid and final judgment of another court.  See, Grogan v. Garner, 498 U.S. 279 (1991); see also, In Re: Bilzerian, 100 F.3d 886, 892 (11th Cir. 1996) ("**Bilzerian I**").  Although Bankruptcy Courts are vested with jurisdiction to determine the dischargeability of debt, "it does not mean that every last fact issue bearing on dischargeability must be re-litigated, re-tried, and again decided when there has been a prior determination of the same facts by a court of competent jurisdiction."  Snydergeneral Corp. v. Gibson, 149 B.R. 562, 572 n. 5 (Bankr. D. Minn. 1993); In Re: Powell, 95 B.R. 236, 238 (Bankr. S.D. Fla. 1989) *aff'd*, 108 B.R. 343 (S.D. Fla. 1989), *aff'd*, 914 F.2d 268 (11th Cir. 1990); In Re: Coover, 70 B.R. 554, 558 (Bankr. S.D. Fla. 1987).

31.     In order for collateral estoppel to apply, the following elements must be present:

(1)     The issue in the prior action and the issue in the bankruptcy court are identical;

(2)     The bankruptcy issue was actually litigated in the prior action;

(3)     The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and

(4)     The burden of persuasion in the discharge proceeding must not be

-8-

significantly heavier than the burden of persuasion in the initial action.

*Id.* (internal citations omitted).

32.     Where the foregoing elements are present, the bankruptcy court should not act as a defacto appellate court with jurisdiction to review another court's earlier judgment.  If a debtor is not satisfied and does not wish to be bound by a prior court's ruling, the remedy is appeal.  See e.g., In Re: Scarfone, 132 B.R. 470, 472 (Bankr. M.D. Fla. 1991).

33.     Collateral estoppel is appropriate in the instant case since the same operative facts which gave rise to the Judgment entered against Bogart, (with all appellate avenues exhausted by Bogart) are the bases of Plaintiff's §§523(a)(2)(A) and (a)(6) claims.  The elements for collateral estoppel are satisfied in this case since: (I) the elements of Counts XIII (RICO) of the RICO Action are identical to the non-dischargeability claims under §§523(a)(2)(A) and (a)(6) in this adversary proceeding, as further discussed below; (ii) the issues of "false pretenses, a false representation, or actual fraud," required under §523(a)(2)(A), and of "willful and malicious injury," required under §523(a)(6), were actually litigated in the RICO Action; (iii) the determination of these issues in the RICO Action was integral to the Jury Verdict and Judgment entered against the Debtor following the RICO Trial; and (iv) the burden of persuasion in the RICO Action was identical to the preponderance of the evidence standard in this adversary proceeding.  Based on the foregoing, the Debtor is precluded from re-litigating the issues already tried and determined in the RICO Action.

34.     The foregoing result is consistent with the findings of numerous other courts determining the preclusive effect of RICO judgments with respect to a creditor's claim for non-dischargeability under §523(a)(2).  See, In Re: Daily, 47 F.3d 365, 367-68 (9th Cir. 1995) (collateral estoppel effect given to issues determined in connection with a judgment under a racketeering statute, resulting in a determination that the debt was non-dischargeable under 11 U.S.C. §523(a)(2)); In Re: Markarian, 228 B.R. 34 (1st Cir. BAP 1998) (collateral estoppel effect could be given to jury's finding of actual fraud in RICO action that was subsequently affirmed on appeal on narrower grounds to determine that the resulting debt was non-dischargeable under 11 U.S.C. §523(a)(2)(A)); In Re: Nix, 92 B.R. 164 (Bankr. N.D. Tex. 1988) (collateral estoppel effect given to finding made in connection with a judgment under a racketeering statute resulting in a determination that the debt was non-dischargeable under 11 U.S.C. §523(a)(2)).

35.     In applying the standard for collateral estoppel to the instant case, the Court may and

-9-

should take judicial notice of the record and rulings entered in the RICO Action, including the RICO Complaint, Jury Instructions, Jury Verdict, and Final Judgment.    Judicial notice of another court's records is appropriate in a Bankruptcy Code §523 action determining non-dischargeability of debt, pursuant to Fed. R. Evid. 201, as made applicable by FRBP 9017.  See, In Re: Jolly, 124 B.R. 365, 368 (Bankr. M.D. Fla. 1991) (taking judicial notice of the record of the state court proceeding and determining that each element necessary to establish non-dischargeability under §§523(a)(2)(A) and (a)(4) was litigated by the parties before a jury); see also, Opoka v. Immigration & Naturalization Serv., 94 F.3d 392, 394 (7th Cir. 1996) (holding that the decision of another court is "a proper subject of judicial notice"); Grochocinski v. Spehar Capital, LLC (In Re: CMGT, Inc.), 384 B.R. 497, 506 (Bankr. N.D. Ill 2008) (noting that, in ruling on a motion for judgment on the pleadings, courts may take judicial notice of matters of public record).

36.    Because the Jury Verdict was rendered in favor of Plaintiff and against the Debtor as to Count XIII (RICO),  it follows that the jury found that Plaintiff satisfied all of the elements of this cause of action, as specifically set forth in the Jury Instructions.  As further discussed below, when the Jury Verdict and Jury Instructions are read in tandem it is apparent that the elements of collateral estoppel have been met.  Accordingly, summary judgment is warranted under FRBP Rule 7056© since there is no remaining genuine issue of material fact with respect to Plaintiff's claims under §§523(a)(2)(A) and (a)(6).

C.    **Non-Dischargeability of Debt Pursuant to Bankruptcy Code §523(a)(2)(A)**

37.    Count I of the Complaint seeks non-dischargeability of the debt due to Plaintiff, for money obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition."  Bankruptcy Code §523(a)(2)(A).

38.    Implied under Bankruptcy Code §523(a)(2)(A) is the initial requirement that money or property is actually obtained.  However, "it is not necessary, under 11 U.S. C. §523(a)(2), that the property be actually procured for the debtor himself."  In Re: Gitelman, 74 B.R. 492, 496 (Bankr. S.D. Fla. 1987).  This requirement is satisfied in the instant case since Plaintiff's purchase of certain license rights, proprietary marks, technology, and other business arrangements, resulted in the RICO enterprise obtaining money from Plaintiff for the sale.  See, RICO Complaint, Count XIII, Jury Instruction No. 22-33, and Jury Verdict.  This element is further evidenced by Bogart's participation in a "scheme to defraud" under RICO, which by definition required that Bogart intended to deceive

or cheat someone out of money or property." The foregoing is also consistent with the Jury's award of damages to Plaintiff, in part for its losses incurred through its payment for the license agreement and contributions to the Debtor and others. See, Jury Instruction No. 33; Jury Verdict Form J, and Judgment.

39.     With respect to the additional requirements that must be satisfied under Bankruptcy Code §523(a)(2)(A), Courts have enumerated the elements with some variation depending on which exception the creditor is traveling under (i.e., false representation, false pretenses, or actual fraud). In analyzing the false representation exception to dischargeability, this Court articulated the elements as follows:

(1)     The Debtor made a false statement with the purpose and intention of deceiving the creditor;

(2)     The creditor relied on the false statement;

(3)     The creditor's reliance on the false statement was justifiably founded; and

(4)     The creditor sustained damages as a result of the false statement.

In Re: Gelinas, 2008 WL 5640701, at p. 4 (Bankr. S.D. Fla. 2008) (citing Fuller v. Johannessen (In Re: Johannessen), 76 F.3d 347, 350 (11th Cir. 1996)). These elements were similarly expressed by the 11th Circuit in **Bilzerian I** with regard to an actual fraud exception to dischargeability. For purposes of analysis, the foregoing elements will hereinafter be referred to as the "Traditional Standard."

40.     The 11th Circuit has recognized that actual fraud is broader than false pretenses or false representations, since it may include a debtor's willful concealment or omission of material facts. In Re: Gitelman, 74 B.R. 492, 496 (Bankr. S.D. Fla. 1987) (citing United States v. Romano, 736 F.2d 1432 (11th Cir. 1984); vacated on another ground 755 F.2d 1401 (11th Cir. 1985).

41.     This broader view of actual fraud is consistent with recent decisions from the 6th, 7th, and 10th Circuits, which treat the "actual fraud" exception as a separately recognized provision in Bankruptcy Code §523(a)(2)(A). In Re: Neuschafer, 514 B.R. 719 (B.A.P. 10th Cir. 2014) (internal citations omitted). These circuits have determined that [a]ctual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right.'" *Id.* (internal citations omitted) (see also, Mellon Bank, N.A. v. Vitanovich (In Re: Vitanovich), 259 B.R.

-11-

873, 877 (6ᵗʰ Cir. B.A.P. 2001). Recognizing that actual fraud is not limited to misrepresentations and misleading omissions, these circuits have held that the actual fraud exception to discharge instead "requires proof of three elements: (1) fraudulent intent; (2) a fraudulent scheme; and (3) an injury caused by the scheme." Neuschafer, 514 B.R. 719, at p. 5. For purposes of analysis, the foregoing elements will be hereinafter referred to as the "Actual Fraud Standard."

42.  The first element of both the Traditional Standard (i.e., statement made with fraudulent intent) and Actual Fraud Standard (i.e., fraudulent intent) are satisfied here. Specifically, the Jury Verdict reveals a jury's determination that the Debtor participated in a "pattern of racketeering activity" under 18 U.S.C. §1962©, which included "using false or fraudulent pretenses, representations, or promises" that were "intended to defraud." See, Jury Instruction No. 28. Stated differently, the jury had to have found that the Debtor acted "knowingly and with specific intent to deceive or cheat someone." Id. at p. 18. To this end, "the existence of the scheme shows the intent." Id.

43.  The jury's determination that the Debtor acted with "intent to defraud" and knowingly and with the intent to deceive by acting in a "scheme to defraud, under RICO, similarly satisfies the second element of the Actual Fraud Standard (that is a fraudulent scheme). See, Jury Instruction No. 29.

44.  Plaintiff's actual reliance, as required by the second element of the Traditional Standard, is met by looking to the Jury Instructions, wherein the jury was specifically instructed to determine if the Plaintiff reasonably relied on the fraudulent representations made by Bogart to Plaintiff through the predicate acts of wire fraud. See, Jury Instructions, No. 31. This element is also implicit in the damages requirements of 18 U.S.C. §1964©, since you cannot find damages caused by violation of §1962 of RICO, without actual reliance.

45.  The Jury Instructions and Verdict, when considered as a whole, also satisfy the "justifiable reliance" requirement under the third element of the Traditional Standard. This is evidenced here since Plaintiff's showing of Bogart's "intent to defraud" required it to demonstrate that an "act knowingly and with the intent to deceive someone for the purpose of causing some loss of property or bringing about some financial gain to oneself to the detriment of a third party", it logically follows that it was reasonably relied upon. Because reasonable reliance is a more stringent standard than justifiable reliance, the justifiable reliance requirement of §523(a)(2)(A) is satisfied

-12-

by the Jury Verdict against the Debtor under Count I (RICO).  See, Jury Instructions, No. 29; Verdict Form J.

46.     Justifiable reliance is further satisfied here since the jury was required to find Bogart's "scheme to defraud includes any plan or course of action intended to deceive or cheat another out of money or property by employing falsehoods, concealing *material facts or omitting material facts*" See, Jury Instructions, No. 29.   The materiality requirement implies that any such reliance on the false pretense or representation is justified.  See, In Re: Bilzerian, 153 F.3d 1278, 1282 (11th Cir. 1998) (hereinafter, "**Bilzerian II**") (finding that "materiality" requirement in connection with 10b(5) violation was sufficient to satisfy reliance requirement necessary to apply collateral estoppel in connection with actual fraud claim under §523(a)(2)(A)); see also, Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972) (causation in fact presumed if plaintiff's claim based on defendant's failure to disclose material information); Basic, Inc. v. Levinson, 485 U.S. 224, 243-247 (1988) (fraud-on-the-market theory permits plaintiffs to rely on integrity of open, well-developed markets rather than requiring proof of direct reliance).

47.     The fourth element of the Traditional Standard and the third element of the Actual Fraud Standard (i.e., damages caused by the fraud) are easily satisfied by looking at the elements of the RICO claim.  A private civil action to recover treble damages under RICO, as was alleged and proven at the RICO Trial, can only be bought by a "person injured in his business or property by reason of a violation of §1962."  18 U.S.C. §1964©.  As a result, the proximate causation requirement necessary to satisfy §523(a)(2)(A) under either standard is evidenced by the jury's award of compensatory damages, and Judgment of treble damages for Plaintiff under Counts XIII (RICO) in the RICO Case.  See, Verdict Form J;  Judgment.

48.     Therefore, Plaintiff's claim satisfies the §523(a)(2)(A) exception to discharge under both the Traditional Standard and Actual Fraud Standard.

49.     Therefore, because the elements of RICO are identical to those required under §523(a)(2)(A), Bogart is collaterally estopped from re-litigating "false representations, false pretenses, or actual fraud" in this case.  Accordingly, Plaintiff is entitled to summary judgment with respect to Count  I of the Adversary Complaint claims since there is no remaining genuine issue of fact.

-13-

D.    **Non-dischargeability of debt pursuant to 11 U.S.C. §523(a)(6)**

50.    Count II of the Adversary Complaint seeks non-dischargeability of Bogart's debt for willful and malicious injury by the Debtor to Plaintiff.

The 11th Circuit in Thomas v. Loveless (In Re: Thomas), 288 Fed. Appx. 547, 549 (11th Cir. 2008), explained that there are two elements that must be satisfied to except a debt from discharge under §523(a)(6).

51.    The first element, that the injury be "willful," is satisfied if the debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 549.  The second element for non-dischargeability under §523(a)(6), "malice," "can be implied when a debtor commits an act that is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill-will.'" *Id.* (quoting In Re: Walker, 48 F.3d 1161, 1164 (11th Cir. 1995).

52.    In Drewes v. Levin (In Re: Levin), 434 B.R. 910 (Bankr. S.D. Fla. 2010), Judge Kimball explained that to meet the "willful" requirement under §523(a)(6), a plaintiff is required to show either: (a) the defendant "subjectively intended the harm that resulted" or (b) the defendant "acted intentionally and the act in question was certain or substantially certain to result in the injury." Levin, 434 B.R. at 918-19; see also, In Re: Antonini, 2011 WL 5593157, at *1 (Bankr. S.D. Fla. 2011) (adopting Thomas and Levin standard to determine non-dischargeability under §523(a)(6)).

53.    The elements of RICO requires the jury to find that Bogart "*voluntarily and intentionally* participated in *scheme to obtain money or property by means of material false or fraudulent* representations", and that Bogart "did so *with intent to defraud".*  See, Jury Instructions No. 28.  In this context, a "scheme to defraud" includes "any plan or course of action *intended* to deceive or cheat someone *out of money or property*" . . . See, Jury Instruction No. 29.  Similarly, in order to find that Bogart "intended to defraud," the jury has to determine that Bogart acted "*knowingly and with the  intent to deceive someone for the purpose of causing some loss of property* . . ."  See, Jury Instructions No. 29.   The common thread in each of the foregoing sub-elements of RICO is the requirement that Bogart's actions were intentional and with the specific purpose to harm the Plaintiff.   Based on the foregoing, Count XIII (RICO) of the RICO Complaint satisfies the "willful" element of §523(a)(6).

54.    The "malice" element of §523(a)(6) is satisfied by the Jury Verdict as to Count XIII

-14-

(RICO) since "act[ing] knowingly and with the specific intent to deceive" Plaintiff constituted a wrongful act by Bogart. See, Jury Instructions No. 29. In this regard, intentionally deceiving or cheating someone out of money can never be with just cause.

55.    Count XIII (RICO) also establishes "malice" since it required a finding of "a scheme to defraud" between Bogart and another RICO Defendant to commit an unlawful act, namely wire fraud, in violation of Federal Statutes. See, Jury Instructions No. 27. Put another way, Bogart's liability for RICO evidences his participation "in a kind of partnership for illegal purposes." An intentional violation of the law is always wrongful. See, Biondo, 2014 WL 2702891, at *8 ("intentional infringement of intellectual property is always wrongful, satisfying the first part of the malicious standard under §523(a)(6).)" In fact, an agreement to commit *illegal acts* requires an even higher standard than a wrongful act.

56.    Moreover, an illegal act can never be committed with just cause. For example, in Biondo, Judge Kimball found that the Court was hard-pressed to imagine a situation in which one has just cause or excuse to engage in intentional infringement of intellectual property." See, Biondo, 2014 WL 2702891, at *8. This is especially true here, where the Debtor intended to defraud Plaintiff and participated in a joint venture to commit illegal acts which resulted in the sale of fictitious license agreement interests, and contributions.

57.    Based on the foregoing, Plaintiff's respective claim satisfies the §523(a)(6) exception to discharge.

58.    Therefore, because the elements of RICO are identical to those required under §523(a)(6), Bogart is collaterally estopped from re-litigating "willful and malicious injury by the debtor.. to the property of another" in this case. Accordingly, Plaintiff is entitled to summary judgment with respect to Count II of the Adversary Complaint claims since there is no remaining genuine issue of fact.

## IV.    CONCLUSION AND REQUESTED RELIEF

59.    Because the elements of RICO are identical to those required under §§523(a)(2)(A) and (a)(6), Plaintiff has satisfied the requirements for collateral estoppel. Therefore, the underlying record, orders, and judgment of the District Court, should have preclusive effect on this Court's determination of the non-dischargeability of the debt under §§523(a)(2)(A) and (a)(6). The Debtor's First Affirmative Defense and Second Affirmative Defense are insufficient to create a genuine issue

-15-

of fact. The Second Affirmative Defense is not really an affirmative defense, but is more in the nature of a denial of the allegations in the Complaint.

60. The First Affirmative Defense does not create an issue of fact in this proceeding. This affirmative defense speaks of some unfiled and unsubstantiated motion that the Debtor intends to file in the RICO Action, to attack the Judgment.    The Judgment is a final non-appealable Judgment.  Even if an appeal were pending, that issue would not effect this Court's ability to use collateral estoppel to bar re-litigation of decided issues.   In re Nix, 92 BR 164 (bankr., N.D.TX, 1988).

61.    Regardless, without more, neither affirmative defense are sufficient to overcome the record of the District Court in the RICO Case, which evidences sufficient grounds for collateral estoppel to except Plaintiff's damages awards from discharge under §§523(a)(2)(A) and (a)(6). Without any facts to support the affirmative defenses, the Debtor fails to meet his burden of proof or come forward with evidence sufficient to dispute an element of the Plaintiff's claims.  See, Amoco Oil Co. v. Gomez, 125 F. Supp. 2d 492, 499 (S.D. Fla. 2000).  At best, Bogart's affirmative defenses are mere denials of Plaintiff's claims, or empty attempts to question the validity of the Judgment.  Summary Judgment is therefore appropriate pursuant to FRBP 7056© since there is no remaining genuine issue of material fact.

61. Because §523(a)(2)(A) precludes discharge of "all liability arising from fraud," including any punitive damages, Plaintiff's damages under Counts XIII (RICO) should be determined to be non-dischargeable.  See, St. Laurent v. Ambrose (In Re: St. Laurent), 991 F.2d 672, 677-79 (11th Cir. 1993) (finding that punitive and actual damages were non-dischargeable under §523(a)(2)(A) where the same fraudulent conduct gave rise to liability); see also, Biondo, 2014 WL 2702891, at *6 (citing Cohen v. de la Cruz, 523 U.S. 213, 217-23 (1998), for the finding that treble damages are non-dischargeable under §523(a)(2)(A) when the damages resulted from fraud, false pretenses, or the like).   Plaintiff's damages, including punitive damages under Count IV (Wantonness) also fall within the exception to discharge under §523(a)(6).  See, Matter of Touchstone, 149 B.R. 721 (Bankr. S.D. Fla. 1993) opinion supplemented on denial of reh'g, 153 B.R. 955 (Bankr. S.D. Fla. 1993) (finding compensatory and punitive damages flowing from willful and malicious conduct non-dischargeable.

**WHEREFORE**, Plaintiff respectfully requests that this Court: (I) take judicial notice of the

-16-

District Court's record, orders, and judgment, including the RICO Complaint, Jury Instructions, Jury Verdict,  Judgment, pursuant to FRBP 9017, (ii) enter summary judgment in favor of the Plaintiff with respect to Counts I and II of the Adversary Complaint, pursuant to FRBP 7056, and (iii) for such other and further relief as this Court may deem just and proper under the circumstances.

I HEREBY CERTIFY that on June 22, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record or pro se parties identified as Eric Scott Brumfield, Esq., The Law Offices of Eric Scott Brumfield, AET II, 7270 NW 12th Street, Suite 555, Miami, FL 33126, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BEHAR, GUTT & GLAZER, P.A.
Attorneys for Olivier Family Interests, Ltd.
2999 N.E. 191st Street, Fifth Floor
Aventura, Florida  33180
Telephone:  (305) 931-3771
Fax:  (305) 931-3774


By: _____**/s/ Brian S. Behar**_____
        BRIAN S. BEHAR
        FBN:  727131